SHELL OIL COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,

Texas Gas Transmission Corporation,
Intervenor,
and

Louisville Gas & Electric Company,
Intervenor.

No. 12568.

United States Court of Appeals
Third Circuit.

Argued Oct. 6, 1958.

Decided Jan. 27, 1959.

Rehearing Denied March 5, 1959.

On Petition to Review an Order of the Federal Power Commission.

Oliver L. Stone, New York City (William F. Kenney, New York City, George C. Schoenberger, Jr., William W. Westerfield, Jr., New Orleans, La., on the brief), for petitioner.

William W. Ross, Washington, D. C. (Willard W. Gatchell, General Counsel, Howard E. Wahrenbrock, Sol., Washington, D. C., on the brief), for respondent Federal Power Commission.

Mathias F. Correa, New York City (Charles F. Detmar, Jr., Lawrence W. Keepnews, Joseph P. Conway, Cahill, Gordon, Reindel & Ohl, New York City, on the brief), for Texas Gas Transmission Corp.

Peter, Heyburn & Marshall and Gavin H. Cochran, Louisville, Ky., on the brief, for intervenor, Louisville Gas & Electric Co.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This case is another in that line wherein the issue has been the effective rate on June 7, 1954, for natural gas sold by a so-called independent producer. That date was when the Supreme Court announced its decision in Phillips Petroleum Co. v. State of Wisconsin, 1954, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035. The effect of that decision was to subject independent producers of natural gas to regulation by the Federal Power Commission. The Commission, in implementing the decision, called for filing of rate schedules setting forth " * * * rates * * * effective on June 7, 1954."

What that rate was for Shell Oil Company in its contract with Louisiana Natural Gas Company [1] depends upon the contract-established provisions rather than on the fortuity of rates which were being actually paid on that date. See Natural Gas Pipeline Company of America v. Federal Power Commission, 3 Cir., 1958, 253 F.2d 3, certiorari denied Dorchester Corp. v. Natural Gas Pipeline Co., 1958, 357 U.S. 927, 78 S.Ct. 1372, 2 L.Ed.2d 1370. The contract had been entered on May 1, 1951 and for the period in question provided for the sale of gas at 8.997¢ per Mcf, unless " * * * at any time after December 31, 1951, Buyer [Louisiana] * * * [should] enter into a contract providing for the purchase by it of gas * * * " produced and delivered within a fifty mile radius of any delivery point specified. In that event the contract price was to escalate to the same price as that called for by the subsequent contract with the other producer.

Louisiana had already succeeded to rights as purchaser under a contract entered with Atlantic Refining Company, another producer, in 1943. Under that contract buyer agreed to buy specified daily quantities of gas; it was provided that the rights of the parties should continue for the producing life of the field involved but for not more than twenty-five years. In that contract the buyer agreed to pay 2.2¢ net per Mcf for gas received for the first five years. No fixed price was established for periods after that, but rather the contract provided:

"(b) At the end of the first five-year period, Buyer and Seller are to reach an agreement as to the price for gas sold and delivered under this contract during the second five-year period. The price to be paid during such second five-year period is to be agreed upon at the beginning of such period after a survey of prevailing prices for gas being sold in similar quantities in the southwestern part of Louisiana.

"(c) During succeeding five-year periods, price to be paid will be determined at the beginning of each period in the same manner as provided for in paragraph (b) above.

"(d) In the event that the parties are unable to agree upon the price to be paid for gas after the first five-year period, in accordance with the arrangements set forth in paragraphs (b) and (c) above, such determination shall be submitted to arbitration in accordance with Condition XII." [2]

A price for the second five year period had been agreed to by negotiation be-

1. Louisiana Natural Gas Company was a subsidiary of Texas Gas Transmission Corporation. On June 30, 1955 it was merged into the parent corporation.

2. Condition XII reads:
"* * * The party desiring such arbitration shall notify the other and in such notice shall name an arbitrator, (sic) the arbitrator to be appointed by the other party shall be named within ten (10) days after receipt of such notice of arbitration, and an additional arbitrator shall, within ten (10) days of the appointment of the second arbitrator, be selected by the two (2) arbitrators theretofore appointed, but if one of said parties shall have failed to appoint an arbitrator within the time provided herein, it is expressly understood and agreed that the sole arbitrator shall arbitrate the question alone. If arbitrators shall have been appointed by the respective parties and shall have failed to select the third arbitrator within the

tween the buyer and seller, but this agreement expired on August 31, 1953. Louisiana and Atlantic undertook negotiations in September of that year for agreeing to a price for the third five year period.

The parties had difficulty in agreeing. The negotiations consumed five and a half months, finally culminating in an agreement dated February 17, 1954, whereby the price was established at 12.5¢ per Mcf, plus gathering tax. Shell thereafter accidentally learned of this and subsequently notified Louisiana that it felt entitled under its contract to an escalation of its price to the same 12.5¢ level.

There is no dispute that the fifty mile radius requirement of the Louisiana-Shell contract is satisfied. The argument concerning Shell's right to a higher price turns on whether the Louisiana-Atlantic agreement of February, 1954 was an "entering of a contract" which activated the price escalation clause of the Louisiana-Shell contract.

When Shell filed its rate schedule with the Federal Power Commission pursuant to the Commission's orders implementing the Phillips decision, the Commission neither accepted or rejected the submitted rate, pending further explanation by Shell of why it claimed 12.5¢ per Mcf. Shell presented that explanation in February, 1957 when it filed for an increase in rate to 16.75¢ per Mcf. The reasonableness of that rate is still awaiting hearing. The Commission at this point directed that a hearing be held to determine the effective rate on June 7, 1954 under the Shell contract which it simultaneously accepted for filing.

As a result of the hearing the examiner found the effective rate to be 12.5¢. This finding was subsequently reversed on November 12, 1957, by the Commis-

sion whose decision is here on appeal by Shell.

The clause in the Louisiana-Shell contract which is central to this controversy is one of the type commonly referred to in the trade as a "most favored nation" clause. The usual objective of such a clause is to assure the seller a top price for its gas. Testimony at the hearing before the Commission's examiner was that Louisiana had desired a twenty year contract which was for a term longer than Shell had at that time ever contracted for, at least in that area. Because of difficulty in establishing a price for so long a period, the clause in question was agreed upon. It appears that at the time of contracting Shell knew Louisiana was purchasing gas from Atlantic but was not familiar with the specific terms of that contract. These facts tend strongly to demonstrate that the intention of the parties was for any higher price paid by Louisiana to another producer to trigger a rise on the Shell contract to the same figure except possibly where a pre-existing contract already provided for a settled step-up in price.

If the precise arrangement under the Atlantic contract had been known to Shell, then perhaps Louisiana could argue to more purpose that the wording of the Shell contract (which calls for the "enter[ing of] a contract providing for the purchase * * * of gas") was not intended to trigger escalation following an agreement on price when that agreement was reached under an earlier gas purchase contract which contained a binding agreement subsequently to agree on price. But even then the fact cannot be avoided that, at least for purposes of the favored nation clause, the "entering of a contract for the purchase of gas" has not been accomplished until the price has

above stated time, the third arbitrator shall be appointed by the senior Judge of the 5th Federal Judicial Circuit upon application therefor by either of said parties to the arbitration.

"* * * The decision in writing signed by a majority of the arbitrators shall be final and conclusive with respect to the matter submitted and the parties hereto agree to accept and abide by the same."

been established. True, Atlantic was obligated to deliver gas for twenty years from 1943 but, just as important, Louisiana was bound to pay for it. And while there may have been enforceable means for settling the rate of payment in the event the parties could not agree, it would nonetheless be true that it was when the price was finally established, by whatever means, that a contract had thereupon been entered. Actually, if the Louisiana-Atlantic agreement of February 17, 1954, was not an entering of a contract we are at a loss as to how it would be properly and legally characterized. The situation fits best into the rubric of an accord itself taken as satisfaction. See 6 Williston on Contracts, §§ 1841, 1846 (rev. ed. 1938). Both parties gave up their rights under the original contract to proceed to arbitration, promising on the one side to pay and on the other side to accept the price reached.

To make the date of the accord retroactive to the date of the original agreement-to-agree is, of course, abstractly conceivable; but for a court to attribute that effect to the Atlantic contract and apply it to the Shell contract in the absence of recognition of this possibility in the Shell contract would take the law out of the realm of business practicalities. It is far more in line with the realities of the situation to say that complete performance of the 1943 contract required the parties to enter into subsequent contracts. The entering into one of those subsequent contrcts triggered the escalation clause in the Shell agreement.

We have assumed without deciding that the Atlantic contract of 1943 did in fact impose a binding agreement-to-agree on the price for gas in each of the contract's last four five year periods. Thus it has not been necessary to determine the several questions raised in connection with the arguments directed to that phase of the case. Of course if the Atlantic contract of 1943 was not a binding agreement-to-agree, that circumstance alone would place the February, 1954 Atlantic contract fully within the terms of the escalation clause in the Shell contract.

The Federal Power Commission order of November 12, 1957 finding Shell's rate with Louisiana on June 7, 1954 to be 8.997¢ per Mcf will be vacated. Because the escalation called for by the contract requires consideration of other factors in determining whether the price to another supplier was indeed higher, the cause will be remanded for consideration of those factors.